# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

JASON S. SEXTON,

                Petitioner,      :      Case No. 2:18-cv-424

   - vs -                            District Judge George C. Smith
                                     Magistrate Judge Michael R. Merz

LYNEAL WAINRIGHT, Warden,
  Marion Correctional Institution

                              :

                Respondent.

## SUBSTITUTED REPORT AND RECOMMENDATIONS

This habeas corpus case is before the Court on Respondent's Objections (ECF No. 20) to the Magistrate Judge's Report and Recommendations ("Report," ECF No. 19) recommending that Respondent's Motion to Dismiss the case as barred by the statute of limitations (ECF No. 5) be granted in part and denied in part. Petitioner has also objected (ECF No. 22) and District Judge Smith has recommitted the case for reconsideration in light of the Objections (ECF No. 21).

The following Report is substituted for the original.

**Procedural History**

In January 1997 Sexton was indicted by the Franklin County grand jury on three counts of aggravated murder with death penalty specifications, one count of kidnapping, and one count of aggravated robbery (Indictment, State Court Record, ECF No. 4, PageID 28-35). Prior to trial his attorney negotiated a plea agreement pursuant to which he pleaded guilty to one count of

1

aggravated murder with specifications and one count of aggravated robbery with agreed consecutive sentences of twenty years to life for the murder and ten to twenty-five years for the robbery (Entry of Guilty Plea, State Court Record, ECF No. 4, PageID 41.) The prosecutor also agreed not to pursue a rape charge arising at the county jail after arrest. The trial judge then imposed the agreed sentence. *Id.* at PageID 42-43). Sexton took no direct appeal.

On December 22, 1998, Sexton filed a petition for post-conviction relief under Ohio Revised Code § 2953.21 in which he acknowledged that he had not appealed the conviction and sentence (State Court Record, ECF No. 4, PageID 46-49). The trial court denied the petition January 28, 1999, concluding both that it was untimely and that it was without merit. *Id.* at PageID 55-61. Sexton did not appeal from that decision and in fact took no other action in the case until he filed a motion for a delayed appeal August 8, 2017 (State Court Record, ECF No. 4, PageID 62-74). The Tenth District Court of Appeals denied that motion September 21, 2017. *Id.* at PageID 107-108. The Ohio Supreme Court declined to accept jurisdiction of Sexton's appeal on January 31, 2018, and he effectively filed his Petition here on April 26, 2018.[1]

Sexton pleads the following Grounds for Relief:

> **Ground One:** Mr. Sexton was denied due process and equal protection of the law when the Franklin County Court of Appeals denied his motion for leave to file a direct appeal, and appointment of counsel for that appeal, a violation of the Fourteenth Amendment to the United States Constitution.
>
> **Ground Two:** Mr. Sexton was denied due process and equal protection of the law when the trial court and counsel failed to inform him of his appellate rights, and his right to counsel on direct appeal, a violation of the Fourteenth Amendment to the United States Constitution.
>
> **Ground Three:** Mr. Sexton was denied his right to effective assistance of counsel when trial counsel failed to consult with him

---

[1] See ECF No. 1, PageID 15, showing placement in the prison mailing system that date. That therefore is the effective filing date. *Houston v. Lack,* 487 U.S. 266 (1988); *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002).

>
> about his right to appeal, and that his guilty plea to aggravated murder with specifications was not in compliance with O.R.C. 2945.06, a violation of the Sixth Amendment to the United States Constitution.

(Petition, ECF No. 1, PageID 17-19.)

**The Motion to Dismiss and the Original Report**

Sexton pleaded guilty to aggravated murder and aggravated robbery on October 10, 1997, in the Franklin County Court of Common Pleas and was sentenced on October 15, 1997 (State Court Record, Entry, ECF No. 4, PageID 42-43). Because Sexton took no appeal at that time, Respondent asserts his conviction became final November 14, 1997, when the time for appeal ran, and the statute of limitations expired one year later, November 15, 1998. During that one year, Sexton filed no application for post-conviction review which would have tolled the statute. Therefore, Respondent asserts, the Petition, filed April 26, 2018, was approximately nineteen and one-half years too late (Motion, ECF No. 5, PageID 148-49).

Sexton claims that the trial court and trial attorney's failures to advise him of his right to appeal constitute a "state-created impediment" to filing a habeas petition that was not removed until June 2017 when an inmate law clerk advised him of the possibility of a delayed appeal (Smith Affidavit, ECF No. 14-1, PageID 174; Sexton Affidavit, *id.* at PageID 176). After that "impediment" was removed, he promptly filed for a delayed appeal and appealed from the denial of that request to the Ohio Supreme Court. He then filed here April 26, 2018. He therefore claims a start date for the statute of limitations of June 2017 under 28 U.S.C. § 2244(d)(1)(B), when the "state-created impediment" was removed by his conversation with inmate law clerk Smith.

Sexton also asserts his due process claim in Ground One, based on denial of his delayed

3

appeal, did not accrue until that denial took place on September 21, 2017, and the statute was tolled during his appeal to the Ohio Supreme Court. He claims "he could not have learned about his lack of notification of appellate rights until he spoke to an Inmate Law Clerk in June of 2017, and thus that the statute of limitations on these claims [Grounds Two and Three] should have started running only at that time, under 28 U.S.C. § 2244(d)(1)(D)." (Reply/Opposition Brief, ECF No. 15, PageID 192-93).

The Original Report accepted Sexton position that his First Ground for Relief only accrued when the Tenth District denied his delayed appeal, relying on *DiCenzi v. Rose*, 452 F.3d 465 (6th Cir. 2006)(Report, ECF No. 19, PageID 219). The Report rejected Sexton's position on Grounds Two and Three, concluding he had "offered no evidence of any action that might be deemed due diligence between January 1999 and June 2017." *Id.* Furthermore,

> Sexton knew as soon as it happened in October 1997 that the trial judge had not told him he had a right to appeal and his attorney had not consulted with him about an appeal and possible grounds for appeal. Those are the factual predicates of Grounds Two and Three.

*Id.* at PageID 220.

Both parties have objected to the Original Report.

**Respondent's Objections**

Sexton's First Ground for Relief claims he was denied due process and equal protection when the Franklin County Court of Appeals denied his motion for leave to file a delayed appeal (Petition, ECF No. 1, PageID 17). Sexton asserts that claim actually accrued on September 21, 2017, when the Tenth District entered its denial (Reply, ECF No. 15, PageID 192). He thus claims the benefit of the starting date for the statute of limitations provided in 28 U.S.C. § 2244(d)(1)(D):

4

"the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Obviously the denial of the delayed appeal motion could not have been discovered before it happened, with or without the exercise of diligence. The Original Report concluded that since the Petition was filed within one year of that denial, it was timely, citing *DiCenzi v. Rose*, 452 F.3d 465 (6th Cir. 2006), for the proposition that a habeas claim arising from denial of a delayed direct appeal accrues when the denial occurs. The precise language from *DiCenzi* reads:

> DiCenzi first claims that the appellate court improperly refused to allow him to file a delayed appeal. This claim accrued when the Court of Appeals for Cuyahoga County denied DiCenzi's motion for delayed appeal, on September 25, 2001. Therefore, under 28 U.S.C. § 2244(d)(1), the AEDPA "clock" began running on September 25, 2001. 1 *See* 28 U.S.C. § 2244(d)(1)(D) (initiating the one-year AEDPA requirement on the date upon which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence).

452 F.3d at 468.

To overcome this language from *DiCenzi*, Respondent relies on *Shorter v. Richard,* 659 Fed. Appx. 227 (6th Cir. Aug. 12, 2016), cited at Objections, ECF No. 20, PageID 224. Shorter had pleaded guilty with an agreed sentence and did not seek a delayed appeal until November 2013, five years after he was sentenced. Shorter's relevant ground for relief reads:

> GROUND ONE: Petitioner was denied due process and equal protection of the law, when the trial court did not inform him of his appellate rights and his subsequent application for leave to file a delayed appeal was denied, in violation of the Fourteenth Amendment to the United States Constitution.

*Id.* at **4.

Petitioner Shorter relied on *DiCenzi* for the same proposition for which the Original Report relied on it. Respondent Warden counters that Shorter could not use the delayed appeal denial

5

date because he had not been diligent in seeking a delayed appeal. *Id.* at **8, relying on *Johnson v. United States,* 544 U.S. 295 (2005). Judge Clay's opinion in *Shorter* found that the *DiCenzi* court had failed to consider *Johnson* which held that

> Where one "discovers" a fact that one has helped to generate, however, whether it be the result of a court proceeding or of some other process begun at the petitioner's behest, it does not strain logic to treat required diligence in the "discovery" of that fact as entailing diligence in the steps necessary for the existence of that fact.

*Id.* at 310. Circuit Judge White concurred in the judgment only, noting that *DiCenzi* was a published decision directly in point which could not be overruled by a subsequent panel.[2]

It is the well-settled law of the Sixth Circuit that a panel of the Court cannot overrule the published decision of another panel. *Hinchman v. Moore,* 312 F.3d 198, 203 (6th Cir. 2002). The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or the Sixth Circuit *en banc* overrules the prior decision. *Issa v. Bradshaw*, ___ F.3d ___, 2018 U.S. App. LEXIS 27131 n.2 (6th Cir. 2018) *United States v. Verwiebe,* 874 F.3d 258, 262 (6th Cir. 2017); *United States v. Elbe*, 774 F.3d 885, 891 (6th Cir. 2014); *Darrah v. City of Oak Park,* 255 F.3d 301, 309 (6th Cir. 2001); *Salmi v. Secretary of HHS*, 774 F.2d 685, 689 (6th Cir. 1985); *accord* 6th Cir. R. 206(c).

Although the Original Report did not discuss *Shorter*, the Magistrate Judge concludes the rule in *DiCenzi* must be modified in light of *Johnson*. *Johnson* relied on the discovered predicate start date in 28 U.S.C. § 2255 that parallels 28 U.S.C. § 2244(d)(1)(D)[3]. Johnson sought as a start date the day on which a Georgia court vacated a prior conviction on which the federal court had later relied to enhance his sentence. The Supreme Court held Johnson did not show due diligence

---

[2] Judge White concurred in the judgment because she found Shorter's claim had no merit. That question is not before this Court at this time and the Magistrate Judge suggests no resolution of it.
[3] The two statutes should be read *in pari materia* since both were adopted as part of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA").

in attacking the state judgment in that he did not file for *vacatur* until more than three years after the federal sentence relying on the state court judgment was entered. Johnson's situation precisely parallels Sexton's. And as the *Shorter* Court noted, the *DiCenzi* court did not consider the impact of *Johnson*, even though it had been decided before *DiCenzi* reached the Sixth Circuit.

Sexton certainly has not shown he exercised due diligence in filing his motion for delayed direct appeal. He relies on his having contacted the Ohio Public Defender in December 1998, but, as the Original Report noted, he did nothing after denial of his *pro se* post-conviction petition until speaking with the inmate law clerk in June 2017. Therefore his First Ground for Relief should be dismissed with prejudice as barred by the statute of limitations.

**Sexton's Objections**

**Objection 1: The Magistrate Judge Erred in Not Considering Whether Ground Three Was Timely Due to the Operation of 28 U.S.C. § 2254(d)(1)(B).**

In his first objection, Sexton asserts the Magistrate Judge should find his Ground Three is timely, based on his state-created impediment theory. The asserted impediment is his trial attorney's failure to consult with him about his right to appeal and that his guilty plea is invalid under the Sixth Amendment because it did not comply with Ohio Revised Code § 2945.06 (Objections, ECF No. 22, PageID 230).

For his theory that ineffective assistance of trial counsel constitutes a state-created impediment within the meaning of § 2244(d)(1)(B), Sexton relies on *Waldron v. Jackson,* 348 F. Supp. 2d 877 (N.D. Ohio 2004). Waldron was convicted by a jury on two counts of rape and two counts of compelling prostitution; he was sentenced to fifty-two years to life. Judge Wells recited

the relevant procedural facts as follows:

> During sentencing, the trial court advised Mr. Waldron of his appellate rights and asked him if he wished to appeal. (Tr. at 708). Both Mr. Waldron and his attorney responded that Mr. Waldron intended to pursue an appeal. (Tr. at 708). The trial court then determined that Mr. Waldron was indigent and appointed attorney James Ingalls to represent him on appeal. (Tr. at 708).
>
> Because Mr. Waldron's judgment entry of conviction and sentence was filed in the trial court on 11 August 1998 (Docket # 14, Ex. D), Mr. Waldron had until 10 September 1998 to file a timely notice of appeal. See Ohio App. R. 4(A) (requiring defendants to file a notice of appeal within 30 days "of entry of the judgment or order appealed . . ."). Mr. Ingalls, Mr. Waldron's court-appointed appellate counsel, missed that deadline by four days, filing a notice of appeal on 14 September 1998. (Docket # 14, Ex. F). On 11 January 1999, the court of appeals dismissed *sua sponte* Mr. Waldron's appeal as untimely. (Docket # 14, Ex. G). According to Mr. Waldron, his appellate counsel did not notify him that the court of appeals had dismissed his appeal. (Waldron Aff. at PP5-6). 2 Eventually, Mr. Waldron asked a friend to contact the court of appeals about his appeal and consequently learned, for the first time, that it had been dismissed. (Waldron Aff. at P7). He then sought assistance from the Office of the Ohio Public Defender. (Waldron Aff. at P8).
>
> On 10 September 2001, the Ohio Public Defender filed, on Mr. Waldron's behalf, a motion for leave to file a delayed appeal, pursuant to Ohio App. R. 5(A). (Docket # 14, Ex. H). On 15 October 2001, the court of appeals denied Mr. Waldron's motion for leave. (Docket # 14, Ex. I). Shortly thereafter, Mr. Waldron filed a motion for reconsideration which the court of appeals also denied on 20 November 2001. (Docket # 14, Exs. J and K). On 26 November 2001 and 3 January 2002, Mr. Waldron appealed both rulings to the Ohio Supreme Court. (Docket # 14, Exs. L and N). The Ohio Supreme Court, on 6 February 2002 and 20 March 2002, denied leave to appeal and dismissed both appeals as not involving any substantial constitutional question. (Docket # 14, Exs. M and P).
>
> On 29 July 2002, Mr. Waldron filed a petition for a federal writ of habeas corpus, pursuant to 28 U.S.C. § 2254, in which he asserts two grounds for relief

348 F. Supp. 2d at 880-81. The State had moved to dismiss Waldron's habeas petition as untimely.

Judge Wells first concluded that it was ineffective assistance of appellate counsel for Waldron's appointed appellate attorney to fail to file a timely notice of appeal despite Waldron's express request that he do so. *Id.* at 883-84, citing *Roe v. Flores-Ortega*, 528 U.S. 470 (2000); *White v. Schotten*, 201 F.3d 743 (6th Cir. 2000); and *Ludwig v. United States,* 162 F.3d 456 (6th Cir. 1998). Because ineffective assistance of appellate counsel is imputed to the State, Judge Wells concluded it constituted a state-created impediment to filing a habeas petition. *Id.* at 884, citing *Winkfield v. Bagley,* 66 Fed. Appx. 578 (6th Cir. May 28, 2003). She adopted Waldron's argument that he could not have brought the habeas petition without exhausting the delayed direct appeal possibility, but he had only needed to file a motion for delayed appeal because his attorney, although appointed to do so, did not file a timely direct appeal. She concluded the ineffective assistance of appellate counsel impediment was not effectively removed until the delayed appeal was denied.

Waldron's procedural situation was materially quite different from Sexton's. Waldron was convicted at trial and had not negotiated a favorable plea agreement as Sexton did. Waldron knew of his right to appeal and expressed his desire to do so in open court at sentencing, which is why a new appellate attorney was appointed to prosecute that appeal[4]. Sexton claims neither his trial judge nor his attorney told him of his appeal rights. He does not claim he ever told either the judge or his attorney that he wanted to appeal. In the event, no direct appeal was filed and Sexton never asked for an appellate attorney until the delayed appeal motion, August 8, 2017.

Sexton never had an appointed direct appeal attorney, so he cannot blame his failure to

---

[4] In Ohio it is standard practice to appoint new counsel for appeal because Ohio requires ineffective assistance of trial counsel claims which can be shown from the appellate record to be raised on direct appeal and an attorney cannot be expected to plead his or her ineffectiveness.

9

appeal on the purported ineffectiveness of any such attorney, who never existed. Had he directed his trial attorney to file a notice of appeal and that attorney had failed to do so, that would have constituted ineffective assistance of trial counsel under *Roe, supra*.[5] However, he does not claim he ever told his trial attorney to appeal.

Sexton has not demonstrated that it was ineffective assistance of trial counsel to fail to file a notice of appeal in his circumstances. His trial attorney had negotiated a dismissal of two out of three aggravated murder counts. He had also negotiated an agreed sentence that was at the time the mandatory minimum for aggravated murder – twenty years to life. In the absence of the plea agreement, Sexton had three chances to find himself in the execution chamber at Lucasville. It is therefore not obvious that he would have wanted to appeal and risk losing the benefit of that plea agreement. In *Ludwig* the Sixth Circuit held

> We emphasize, of course, that a defendant's actual "request" is still a crucial element in the Sixth Amendment analysis. The Constitution does not require lawyers to advise their clients of the right to appeal. Rather, the Constitution is only implicated when a defendant actually requests an appeal, and his counsel disregards the request.

162 F.3d at 459. In *Roe* the Supreme Court rejected a *per se* rule which would require an attorney to file a notice of appeal regardless of whether the client asks. The Court held counsel must consult with the client about the advantages and disadvantages of taking an appeal when there is reason to think that a rational defendant would want to appeal or this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In sum, Judge Wells' reasoning in

---

[5] *Roe* was decided in 2000, well after Sexton's conviction. *Ludwig* was decided in 1998, but it followed every Court of Appeals to decide that question. 162 F.3d at 459. Thus a reasonably competent attorney at the time of Sexton's trial would have understood it would be ineffective assistance of trial counsel to fail to file a notice of appeal if the client requested it.

10

*Waldron* depends upon a finding of ineffective assistance of counsel which Sexton has not demonstrated.

*Waldron* also depends on construing ineffective assistance of trial or appellate counsel as a state-created impediment within the meaning of 28 U.S.C. § 2244(d)(1)(B). For that proposition, Judge Wells relied entirely on *Winkfield v. Bagley, supra*. In that case the trial judge was told at sentencing that one of the trial attorneys, Roger Warner, would be handling the appeal, but no appeal was ever filed. Although Winkfield was not sentenced to death, Mr. Warner, who was then a member of the death penalty bar of this Court, gave Winkfield the standard death penalty attorney excuse for delay:

> Contrary to your mistaken belief at this time, we have been working on your case …. Delay at this point in time can only help your case. I cannot emphasize that enough …. the negligence that you allege in your letter is not correct-- it is a trial tactic, or an appellate tactic, designed to be of benefit to you …. One must consider what is the makeup of the [Supreme Court] potentially five to ten years from now. The further I can delay it now, the better the chance we will have a favorable court reviewing your case some time in the future …. Therefore, the decision to not expedite the appellate process is a carefully reasoned and thought out process with consultation with numerous other attorneys on your behalf.

Ten years later, finding this conduct to constitute ineffective assistance of appellate counsel, the Tenth District Court of Appeals granted Winkfield's motion for delayed appeal. While the Sixth Circuit accepted that finding and imputed the ineffective assistance of appellate counsel to the State, it was unwilling to find that the ineffective assistance of appellate counsel prevented Winkfield from filing his petition:

> No connection has been established between Warner's ineffective assistance and Winkfield's ability to file a federal habeas petition. The fact that Winkfield was able to file his Rule 5(a) motion for a

> delayed appeal while the alleged impediment still existed (i.e., while operating under the mistaken belief that his appeal was pending or was being strategically delayed by Warner) also suggests that Winkfield was not prevented by Warner's advice from timely filing his habeas petition. Cf. *Dean v. Pitcher*, 2002 U.S. Dist. LEXIS 24628, No. Civ. 02-71203-DT, 2002 WL 31875460, at *3 (E.D. Mich. Nov. 7, 2002) ("The fact that petitioner eventually filed his habeas petition even though his state appellate counsel had advised him not to do so demonstrates that his counsel's advice was not an unconstitutional impediment to the filing of his habeas petition.") Therefore, Winkfield has failed to "allege facts that establish that he was so inhibited by the state's action that he was unable to file and state a legal cause of action before the limitation period expired." *Neuendorf v. Graves*, 110 F. Supp.2d 1144, 1153 (N.D. Iowa 2000) (quotation omitted).

*Id.* at 583. Sexton is in the same position: he asserts a causal relationship between his trial attorney's failure to file and his delay, but he has not proved such a causal relationship.

In sum, Sexton has not established that the failure of his trial attorney to file a notice of appeal was ineffective assistance of trial counsel or that, even if it was, that failure prevented him from filing his petition here in time. Sexton is not entitled to a start date for the statute of limitations under 28 U.S.C. § 2244(d)(1)(B).

**Objection 2: The Magistrate Failed to Liberally Construe Sexton's Claim that Ineffective Assistance of Counsel Constituted a State-Created Impediment that Prevented the Filing of His Habeas Petition.**

Sexton contends the Magistrate Judge mischaracterized his state-created impediment argument by limiting it to failure to advise of appellate rights. Instead, he says, the Court must also consider trial counsel's ineffectiveness in failing to advise that the guilty plea was unintelligent because trial counsel did not advise Sexton of the three-judge panel requirement for

12

taking a guilty plea in a capital case (Objections, ECF No. 22, PageID 232-34).

The Magistrate Judge agrees that Sexton's state-created impediment claim embraces both these ineffective assistance of trial counsel assertions. However, expanding the analysis to include this second sub-claim does not change the outcome.

Sexton's material added by expansion of the record shows that he learned about delayed appeal and of the three-judge panel requirement from Inmate Law Clerk Smith in June, 2017. This does not prove that he could not have learned of it earlier or that ineffective assistance of trial counsel prevented him from filing. First of all, for the reasons given under Objection 1, he has not proven an ineffective assistance of trial counsel claim on failure to take an appeal.

As to the second new piece of law learned from Inmate Smith, Sexton has also not proved ineffective assistance of trial counsel. Under the governing federal standard adopted in *Strickland v. Washington,* 466 U.S. 668 (1984), a habeas petitioner must prove both deficient performance and resulting prejudice. Trial counsel's failure to advise of the three-judge panel requirement as a basis for appeal did not constitute deficient performance.

In *State v. Parker*, 95 Ohio St. 3d 524 (2002), the Ohio Supreme Court held that "A defendant charged with a crime punishable by death who has waived his right to trial by jury must, pursuant to R.C. 2945.08 and Crim. R. 11(C)(3), have his case heard and decided by a three-judge panel even if the state agrees it will not seek the death penalty." *Id.* at syllabus. Justice Douglas noted "regardless of the state's agreement that it would not seek the death penalty, appellee was still *charged* with an offense that was punishable with death." 95 Ohio St. 3d at ¶ 11. That language describes Sexton's situation: even though he had an agreed sentence of twenty years to life, Count Two of the Indictment, to which he pleaded guilty, still contained a

13

capital specification.

However, trial counsel's failure to advise Sexton about the three-judge panel requirement was not ineffective assistance of trial counsel. First of all, *Parker* was not decided until June 26, 2002, more than four and one-half years after Sexton pleaded guilty. Nor was Parker a foreordained decision just waiting for pronouncement by the Supreme Court: in *Parker* the Supreme Court of Ohio adopted an interpretation of Ohio Revised Code § 2945.06 given by the Eighth District Court of Appeals but in conflict with the interpretations of that statute by the Fifth District. The Supreme Court of Ohio took the case in part to resolve the conflict. 95 Ohio St. 3d at ¶ 3. Moreover, *Parker* was decided by a narrowly divided court, on a vote of four to three. In dissent Justice Resnick called the decision hypertechnical. *Id.* at ¶ 13. Counsel is not ineffective for failure to predict the development of the law. *Thompson v. Warden*, 598 F.3d 281 (6th Cir. 2010), *citing Lott v. Coyle,* 261 F.3d 594, 609 (6th Cir. 2001)(not ineffective assistance of appellate counsel to fail to anticipate *State v. Foster* in an appellate district which had ruled the other way.) *Accord, Carter v. Timmerman-Cooper*, 2010 U.S. App. LEXIS 10549 (6th Cir. 2010).

Because it was not ineffective assistance of trial counsel to fail to anticipate *Parker*, that was not a state-created impediment to filing in habeas.

**Objection 3: The Magistrate Judge Erroneously Concluded Mr. Sexton Was Aware of the Factual Predicates of Grounds Two and Three**

Petitioner claims his Second and Third Grounds for Relief are timely because he filed his Petition within a year of learning the factual predicates of the claims. If that were so, the Petition would be timely under 28 U.S.C. § 2244(d)(1)(D). The factual predicate of Ground Two is that neither the trial judge nor Petitioner's counsel advised him of his right to appeal. The factual

14

predicate of Ground Three is that trial counsel did not consult with Sexton about taking an appeal or the three-judge panel rule.

The Original Report concluded Sexton learned of these facts when they happened – in October 1997 at the time of sentencing. Sexton now claims he did not learn of these facts until he consulted with Inmate Smith in June 2017 (Objections, ECF No. 22, PageID 234). He claims to have prove this with Inmate Smith's Affidavit and notes that Respondent has not refuted that Affidavit which he asserts means the Affidavit must be taken as true. *Id.*

Smith's Affidavit does not speak to the factual predicates of Grounds Two and Three, but to their purported legal significance. Sexton was in court when the trial judge failed to advise of appeal rights; Smith was not. Smith only learned of the lack of advice of rights from Sexton (See Affidavit, ECF No. 14-1, ¶ 7). Learning the legal significance of historical facts one has known for over eighteen years does not re-start the statute of limitations.

Even if discovering what Smith had to tell him were to constitute discovery of the factual predicate of Grounds Two and Three, Sexton has done nothing to show he exercised due diligence in learning about those predicates. Doing nothing between January 1999 and June 2017 is not due diligence.

**Objection 4. Respondent's Reliance on Unpublished Cases Is Misplaced.**

This Objection is dealt with in the discussion of Shorter under Objection 1.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge recommends granting Respondent's Motion in its entirety. The Petition herein should be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

October 26, 2018.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by mail. .Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).