**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

JASON S. SEXTON,

      Petitioner,

  v.

LYNEAL WAINWRIGHT, WARDEN,
MARION CORRECTIONAL INSTITUTION,

      Respondent.

Case No. 2:18–CV–424
Judge George C. Smith
Magistrate Judge Michael R. Merz

## OPINION AND ORDER

Respondent has moved to dismiss the petition for federal habeas relief because the three grounds it asserts are time–barred. ("*Motion to Dismiss*"). (ECF No. 5). On September 17, 2018, the Magistrate Judge issued a *Report and Recommendation* ("*First R&R*") recommending that the petition be dismissed because it was untimely. (ECF No. 12). In light of Petitioner's subsequently received *Response in Opposition to the Motion to Dismiss* ("*Response*"), (ECF No. 15), the Magistrate Judge withdrew the *First R&R* (ECF No. 16). Petitioner also filed objections to the *First R&R*. (ECF No. 18). On October 4, 2018, the Magistrate Judge issued a second *Report and Recommendation* ("*Second R&R*") recommending that the *Motion to Dismiss* be granted in part and denied in part because even though grounds two and three are untimely, ground one is not. (ECF No. 19). Respondent filed objections to the *Second R&R* (ECF No. 20), and the Court recommitted the matter to the Magistrate Judge for further analysis. (ECF No. 21). Petitioner also filed objections to the *Second R&R*. (ECF No. 22).

On October 29, 2018, the Magistrate Judge issued a *Substituted Report and Recommendation* (*"Substituted R&R"*), (ECF No. 23), recommending that the *Motion to Dismiss*, (ECF No. 5), be granted in its entirety because all three grounds in the petition are untimely. Petitioner has objected to the *Substituted R&R*. (ECF No. 24). Pursuant to 28 U.S.C. § 636(b), the Court has conducted a *de novo* review. For the reasons that follow, Petitioner's objections are **OVERRULED**. The *Substituted R&R* is **ADOPTED** and **AFFIRMED** subject to one exception described below. This action is **DISMISSED**.

Pursuant to a plea agreement entered in the Franklin County Court of Common Pleas, Petitioner was convicted and sentenced to serve consecutive terms of 20 years to life for one count of aggravated murder, and ten to twenty–five years for one count of aggravated robbery. (ECF 4, at PAGE ID # 38–43). Petitioner alleges that his case was heard by a single judge. (ECF No. 1, at PAGE ID # 1). Sentence was imposed on October 15, 1997. (ECF No. 4, at PAGE ID # 42–43). Petitioner alleges that counsel failed to consult with him about his right to appeal or to tell him that he was entitled to have his case heard by a three–judge panel, and that both counsel and the trial court failed to inform Petitioner about his appellate rights, including his right to appointed counsel on direct appeal. (ECF No. 1, at PAGE ID # 18–19). Petitioner alleges that because of those failures, he did not directly appeal his conviction or sentence.

At some point after sentencing, Petitioner wrote to the State Public Defender, as evidenced by a December 3, 1998, letter from the Public Defender's Office addressed to Petitioner. The letter acknowledged Petitioner's correspondence, informed him that he could file a petition for post–conviction relief, and stated that filing forms were enclosed. (ECF No. 14–5). Subsequently, on December 22, 1998, Petitioner filed a *pro se* petition for post–conviction relief under Ohio Rev. Code § 2953.21 and moved for appointed counsel. (ECF No. 4, at PAGE ID #

46–54; ECF No. 14–6, at page ID # 180–182). The state appellate court denied the petition for post–conviction relief on January 28, 1999, because it was untimely and lacked merit. (ECF No. 4, at PAGE ID # 55–61). Petitioner did not directly appeal that January 28, 1999, decision either.

Petitioner wrote to the state court's clerk on August 17, 2000, to request a copy of his docket sheet, and then wrote a second letter to the Public Defender's Office sometime prior to January 3, 2017. (ECF No. 4, at PAGE ID # 101, ECF No. 14–6, at PAGE ID # 179). Petitioner alleges that he remained, however, ignorant of his appellate rights until June of 2017, when he spoke to an inmate law clerk about his state court case. After that discussion, Petitioner sought leave in the state courts on July 23, 2017, to file a delayed appeal of his 1997 conviction pursuant to Rule 5(A) of the Ohio Rules of Appellate Procedure. (ECF No. 4, at PAGE ID # 62–65, 66–74). On September 21, 2017, the Ohio Court of Appeals denied Petitioner's request for leave to file a delayed appeal because he did not present a "viable reason for the delay in his attempt to appeal." (*Id.*, at PAGE ID # 107–108). Petitioner sought an appeal of that determination, but the Ohio Supreme Court declined to exercise jurisdiction over the matter on January 31, 2018. (*Id.*, at PAGE ID # 112–129, 130).

Petitioner placed his petition for federal habeas relief in the prison mail system on April 25, 2018. (ECF No. 1, at PAGE ID # 15). In ground one, Petitioner alleges that he was denied his due process and equal protection rights when the Ohio Court of Appeals denied his motion for a delayed appeal on September 21, 2017. (ECF No. 1, at PAGE ID # 17–18). In ground two, Petitioner alleges that he was denied his due process and equal protection rights in 1997, when the trial court and counsel failed to inform him about his appellate rights. (*Id.*, at PAGE ID # 18). In ground three, Petitioner alleges that counsel rendered constitutionally ineffective

assistance in 1997 by failing to consult with him about his appellate rights; by allowing him to plead guilty to aggravated murder before a single judge instead of a three–judge panel; and by failing to inform Petitioner that a three–judge panel was required to take his guilty plea. (*Id*., at PAGE ID # 19).

The Magistrate Judge correctly concluded that Petitioner's grounds are all time–barred. 28 U.S.C. § 2244(d)(1)(A)[1] provides that the one–year statute of limitations commences running from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review . . ." Petitioner's judgment of conviction became final on November 14, 1997, *i.e.*, thirty days after his October 15, 1997 conviction, and when the time to directly appeal that conviction expired pursuant to Ohio Appellate Rule 4(A). Under § 2244(d)(1)(A), the statute of limitations started running the next day, November 15, 1997, and expired one year later, on November 16, 1998.[2] Petitioner, however, filed his April 25, 2018

---

[1] All possible statute of limitation start dates are set forth in 28 U. S. C. § 2244(d)(1)(A)–(D), which provides:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

    (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

[2] November 15, 1998, fell on a Sunday. Therefore, the one–year statute of limitations expired one day later.

petition almost twenty years after that. Accordingly, his claims are untimely unless some other provision of § 2244(d)(1) applies.[3]

The Magistrate Judge also correctly concluded that no other provision of § 2244(d)(1)[4] applies to grounds two and three. Specifically, the Magistrate Judge correctly rejected Petitioner's contention that the applicable statute of limitations for grounds two and three is found in § 2244(d)(1)(B), which provides that the statute of limitations starts to run from "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action . . ." In support of that contention, Petitioner alleges that counsel's actions—failing to consult with him about his appellate rights, allowing him to plead guilty to aggravated murder before a single judge, failing to inform him about the three–judge panel requirement,[5] and failing to inform him about his appellate rights—and the trial court's failure to advise Petitioner about his appellate rights, all constituted state–created impediments. Petitioner further contends that those state–created impediments were not removed until his June 2017 discussion with an inmate law clerk about his case, and therefore, the statute of limitations for

---

[3] Petitioner's other collateral filings in the state courts— the December 22, 1998 motion for post-conviction relief and the July 23, 2017 motion for a delayed appeal—do not toll the statute of limitations under 28 U.S.C § 2244(d)(2) because the statute of limitation had already expired before they were filed. State collateral actions filed after the statute of limitations has expired do not toll the running of the statute of limitations under § 2244(d)(2). *Board v. Bradshaw,* 805 F.3d 769 (6th Cir. 2015) (citing cases and explaining that unsuccessful motions for a delayed appeal cannot restart the running of the statute under § 2244(d)(1)(A), but can only toll an unexpired limitations period under § 2244(d)(2)); *see also Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) ("The tolling provision does not . . . 'revive' the limitation period (*i.e.*, restart the clock at zero); it can only serve to pause a clock that has not yet fully run. Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations").

[4] Petitioner does not invoke § 2244(d)(1)(C).

[5] The Magistrate Judge explained that the applicability of the three–judge panel requirement in cases like Petitioner's, where a defendant pleads guilty to a capital offense but the death penalty is not sought, was not definitively announced by the Ohio Supreme Court until 2002, which is after Petitioner pleaded guilty in 1997. *See State v. Parker*, 95 Ohio St. 3d 524 (2002). Accordingly, any claims related to the three–judge panel requirement would likely be barred on the merits even if they were not untimely.

grounds two and three did not start running until then. As the Magistrate Judge explained, however, even if these alleged failures constituted state–created impediments to filing a direct appeal in state court, "a state–created impediment to a direct appeal in the state court does not invoke the limitations period of § 2244(d)(1)(B) because it is not an impediment to filing a timely federal habeas petition." *Oberacker v. Noble*, No. 18–3589, 2018 WL 4620666, *2 (6th Cir. Sept. 24, 2018) (citing cases); *Winkfield v. Bagley*, 66 F. App'x. 578, 582–83 (6th Cir. 2003) (holding that the ineffectiveness of counsel—which caused petitioner to miss the appeal deadline—was not an "impediment" to filing a timely habeas application because "[petitioner] has not alleged that [his attorney] erroneously informed him that he had no federal remedies"); *Miller v. Cason*, 49 F. App'x. 495, 497 (6th Cir. 2002) (the failure to give the petitioner notice of his appeal rights and to appoint appellate counsel did not constitute a state–created impediment under § 2244(d)(1)(B) because while such action may have interfered with the petitioner's direct appeal in the state courts, it did not preclude him from timely filing a federal habeas petition). Petitioner does not object to this finding in the *Substituted R&R*. (ECF No. 24).

The Magistrate Judge also correctly rejected Petitioner's contention that the statute of limitations for grounds two and three is governed by 28 U.S.C. § 2244(d)(1)(D). When that subsection applies, the statute of limitations starts running on "the date on which the factual predicate of the claim or claims could have been discovered through the exercise of due diligence." § 2244(d)(1)(D). Petitioner alleges that he did not discover the factual predicate for his claims until he learned about his appellate rights during his June 2017 discussion with an inmate law clerk. As explained by the Magistrate Judge, however, the term "factual predicates" refers to factual evidence and events, not legal conclusions. "The operative question in such an inquiry is when the person was aware of the vital facts for his claim, not when he understood the

6

legal significance of those facts." *Smith v. Meko*, 709 F. App'x. 341, 344 (6th Cir. 2017), *cert. denied*, 138 S. Ct. 1034 (2018) (citing cases). *See also Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000) (rejecting a habeas petitioner's argument that the statute of limitations begins to run "when a prisoner *actually understands* what legal theories are available") (emphasis in original). The vital facts for Petitioner's claims are that counsel allegedly failed to consult with him about his appellate rights; allowed him to plead guilty to aggravated murder before a single judge; failed to inform Petitioner about the three–judge panel requirement; and that counsel and the trial court failed to advise him about his appellate rights. Petitioner became aware of these vital facts when they allegedly occurred in 1997, and his awareness of them triggered the statute of limitations even if he did not appreciate their legal significance. *Webb v. United States*, 679 F. App'x. 443, 448 (6th Cir. Feb. 17, 2017) *cert denied*, 137 S. Ct. 2314, (June 26, 2017) (quoting *Redmond v. Jackson*, 295 F.Supp. 2d 767, 771 (E.D. Mich. 2003) ("Also, under § 2244(d)(1)(D), the time under the limitations period begins to run [ ] when a petitioner knows, or through due diligence, could have discovered, the important facts for his claims, not when the petitioner recognizes the legal significance of the facts."). Petitioner does not object to this finding in the *Substituted R&R*.

The Magistrate Judge also correctly concluded that ground one is untimely. In ground one, Petitioner alleges that he was denied his due process and equal protection rights when the state appellate court denied his motion for leave to file a delayed appeal on September 21, 2017. He also alleges that the statute of limitations for this claim is also governed by § 2244(d)(1)(D)—*i.e.*, it did not start running until the factual predicate of the claim or claims could have been discovered through the exercise of due diligence. Petitioner contends that he could not know the factual predicate for this claim until his motion for delayed appeal was

denied. The Magistrate Judge determined, however, that even if the statute of limitations for this claim is governed by § 2244(d)(1)(D), the claim is untimely because Petitioner failed to exercise diligence.

When reaching that conclusion, the Magistrate Judge considered the Sixth Circuit Court of Appeals holdings in *DiCenzi v. Rose*, 452 F.3d 465 (6th Cir. 2006), and *Shorter v. Richard*, 659 Fed. App'x. 227 (6th Cir. 2016). In *Dicenzi*, counsel and the state trial court failed to inform a petitioner who pleaded guilty about his appellate rights and he failed to file a timely direct appeal. 452 F.3d at 465. Two years later, and after filing motions for judicial release and to merge his convictions, the petitioner contacted a public defender, who informed him about his appellate rights. *Id*. at 467. The petitioner filed a motion for a delayed direct appeal, but that motion was denied by the state appellate court. *Id*. The petitioner sought federal habeas relief and alleged a number of claims, including that his due process rights were violated when the state appellate court denied his motion for a delayed appeal. The Sixth Circuit summarily stated that pursuant to § 2244(d)(1)(D), the statute of limitations for that due process claim started running when the motion for a delayed appeal was denied. *Id*. at 468. It then analyzed whether the petitioner had initiated his federal habeas action within a year of that date, and concluded that because he had done so, his due process claim was timely. *Id*. at 468–69.

In *Shorter*, however, the Sixth Circuit reached a different conclusion. In that case, a state trial court failed to inform a petitioner who pleaded guilty about his appellate rights and he failed to file a timely direct appeal. 659 Fed. App'x. at 228–229. Five years later, he filed a motion for a delayed appeal, which the state appellate court denied. *Id*. In his subsequent federal habeas action, the petitioner alleged, among other things, that his equal protection and due process rights were violated when the state appellate court denied his motion for a delayed appeal. *Id.* The

Sixth Circuit concluded that the *Shorter* petitioner's equal protection and due process claim was untimely because § 2244(d)(1)(D) allows a delayed start date for the statute of limitations when the claims *could* have been discovered through due diligence, not when they are discovered. *Id.* at 232. The *Shorter c*ourt explained that the duty of diligence was triggered when the *Shorter* petitioner was sentenced, but that he did not demonstrate diligence— he waited five years after he was sentenced to file a motion for a delayed appeal, offered no explanation for that five–year delay, and failed to describe what he did during those five years aside from claiming that he learned about the possibility of an appeal after talking to another inmate in 2013. *Id*. at 230, 232. The *Shorter c*ourt reasoned that although Petitioner did not know that his motion for delayed appeal would be denied until it was in fact denied, that denial could have occurred sooner had petitioner exercised diligence in bringing his motion.

The *Shorter* court also discussed the United States Supreme Court's decision in *Johnson v. United States*, 544 U.S. 295 (2005). It noted that in *Johnson*, a federal prisoner's habeas claim was untimely under 28 U.S.C. § 2255(f)(4),[6] even though it was brought within one year of the date that a state court vacated a state conviction that had been used to enhance the petitioner's federal sentence. 659 Fed. App'x. at 231 (discussing *Johnson*, 544 U.S. at 295, 302). The Supreme Court explained that the one–year statute of limitations could only start running from the date of the state court's vacatur order "if the petitioner has shown due diligence in seeking the [state court] order." *Id*. (quoting *Johnson*, 544 U.S. at 302). Moreover, the *Shorter* court noted that reading *DiCenzi* for the proposition that a petitioner is not required to diligently seek a delayed direct appeal in cases like the one before it would fail to give full effect to

---

[6] Section 2255(f)(4) is the analog to § 2244(d)(1)(D) for federal prisoners. It provides that the statute of limitations begins to run on "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence."

§ 2244(d)(1)(D), which states that the statute of limitations starts running when the factual predicate for a claim "'*could have been discovered through the exercise of due diligence*.'" *Id*. at 232 (quoting § 2244(d)(1)(D)).

The Magistrate Judge concluded that although a panel of the Sixth Circuit cannot overrule the published decision of another panel, *DiCenzi* should be modified in light of the Supreme Court's decision in *Johnson* because *DiCenzi* did not consider *Johnson*. 6th Cir. R. 32.1(B); *see also Issa v. Bradshaw*, 904 F.3d 446, 454 n.2 (6th Cir. 2018) (quoting *Salmi v. Secretary of HHS*, 774 F.2d 685, 689 (6th Cir. 1985) ("A panel of this Court cannot overrule the decision of another panel. The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision.")). Accordingly, the Magistrate Judge found that the statute of limitations for ground one did not start running until the motion for delayed appeal was denied unless Petitioner was diligent in moving for the delayed appeal. The Magistrate determined that Petitioner had failed, however, to demonstrate such diligence. The Court agrees. Even though he was permitted to expand the record (ECF Nos. 14, 15), Petitioner does not explain or demonstrate why he could not have moved for a delayed appeal sooner through the exercise of due diligence. Instead, it appears that Petitioner simply was not diligent. In 1998, Petitioner wrote one letter to the Public Defender's Office and filed an untimely motion for post–conviction relief. Petitioner waited eighteen and a half years before speaking to an inmate law clerk and filing a motion for a delayed appeal. He waited nineteen years to file his federal habeas petition. The record demonstrates that during that lengthy period, Petitioner wrote one letter to the clerk to request his docket sheet and one additional letter to the State Public Defender's Office. Petitioner does not allege that he took any other actions during this lengthy

10

period.  Nor does he explain why he could not have done more.  Consequently, Petitioner is not entitled to a delayed start date of the statute of limitations for ground one pursuant to § 2244(d)(1)(D).  Ground one is, therefore, untimely.

Petitioner objects to the Magistrate Judge's analysis of ground one.  Those objections are not well taken.  Petitioner asserts that the Magistrate Judge erred by relying on the Sixth Circuit's decision in *Shorter* instead of *DiCenzi* because one panel of the court cannot overrule another panel.  As explained above, however, the Magistrate Judge concluded that *DiCenzi* should be modified in light of *Johnson*.  The Court agrees and finds that *Shorter* supports that conclusion.  In addition, Petitioner asserts that the Magistrate Judge wrongly found that the *Johnson* petitioner's situation precisely paralleled that of the Petitioner in this matter.  The Magistrate Judge did not, however, make such a finding but instead found that the Supreme Court's analysis in *Johnson* persuasively demonstrates that habeas claims predicated upon court actions, such as vacatur orders and delayed direct appeals, require federal and state habeas petitioners to diligently pursue such court actions.  Petitioner also urges that the Court to rely upon the reasoning in a 2009 decision from the Northern District of Ohio citing *DiCenzi*.  The Court nevertheless remains persuaded by the Sixth Circuit's more recent reasoning in *Shorter*.

For all of the foregoing, Petitioner's objections are **OVERRULED**.  This action is **DISMISSED**.  The *Substituted R&R*, is **ADOPTED** and **AFFIRMED** in part.

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, the Court must consider if it will issue a Certificate of Appealability ("COA").  A state prisoner who seeks a writ of habeas corpus in federal court does not have an automatic right to appeal a district court's adverse decision unless the court issues a COA.  28 U.S.C. § 2253(c).  When a claim has been denied on the merits, a COA may be issued only if the

petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing of the denial of a constitutional right, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, n.4 (1983)). When a claim has been denied on procedural grounds, a certificate of appealability may be issued if the petitioner establishes that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.*

In this case, the Court is not convinced that jurists of reason could debate whether the Court's timeliness analysis is correct. The Court, therefore, **DECLINES** to issue a COA.

The Magistrate Judge also recommended that the Court certify that any appeal would be objectively frivolous. The Court does not adopt that recommendation and does not make that certification.

**IT IS SO ORDERED.**

    *s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**